IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ‖ | |
| Plaintiff, | ‖ | No. 17-CR-83-LRR |
| vs. | ‖ | **ORDER** |
| DAVID TACHAY HEARD, | ‖ | |
| Defendant. | ‖ | |

_____

*TABLE OF CONTENTS*

*I.    INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

*II.   RELEVANT PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . *2*

*III.  ANALYSIS.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*
    *A.    Complaint* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
        *1.    Applicable law*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
        *2.    Validity of Defendant's conviction*. . . . . . . . . . . . . . . . . *5*
    *B.    Sequestration Violation* . . . . . . . . . . . . . . . . . . . . . . . . . . *6*
        *1.    Applicable law*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*
        *2.    Factual findings* . . . . . . . . . . . . . . . . . . . . . . . . . . . *7*
        *3.    Effect of alleged violation* . . . . . . . . . . . . . . . . . . . . . *9*
    *C.    Misconduct Allegations* . . . . . . . . . . . . . . . . . . . . . . . . . *10*
        *1.    Detention hearing* . . . . . . . . . . . . . . . . . . . . . . . . . *11*
        *2.    DNA warrant* . . . . . . . . . . . . . . . . . . . . . . . . . . . *12*
        *3.    Trial testimony* . . . . . . . . . . . . . . . . . . . . . . . . . . *12*

*IV.   CONCLUSION*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *14*

## *I. INTRODUCTION*

The matters before the court are Defendant David Tachay Heard's pro se "Missive to . . . Dismiss all Charges with Prejudice" ("First Motion") (docket no. 110) and Defendant's pro se "Mission to Dismiss all Charges with Prejudice" ("Second Motion") (docket no. 125) (collectively, "Motions").

## II. RELEVANT PROCEDURAL HISTORY

On November 15, 2017, a grand jury returned a four-count Superseding Indictment (docket no. 27) charging Defendant with: (1) possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); (2) possession with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D) and 851; (3) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 922(c)(1)(A) and 924(c)(1)(C)(i); and (4) possession of a stolen firearm, in violation of 18 U.S.C. §§ 922(j) and 924(a)(2). *See* Superseding Indictment at 1-3. On January 22, 2018, a jury trial commenced. *See* January 22, 2018 Minute Entry (docket no. 76). On January 24, 2018, the jury found Defendant guilty of all counts charged in the Superseding Indictment. *See* Jury Verdict (docket no. 84).

On April 16, 2018, Defendant filed the First Motion. On April 24, 2018, Defendant filed the Second Motion. On May 7, 2018, the government filed a Resistance (docket no. 131) to the Motions. On June 19, 2018, the court held a hearing ("Hearing") on the Motions. *See* June 19, 2018 Minute Entry (docket no. 169). Defendant appeared in court pro se. Defendant's standby counsel, Anne Laverty, was present at counsel table with Defendant during the hearing. Assistant United States Attorneys Timothy Vavricek and Lyndie Freeman represented the government. The matter is fully submitted and ready for decision.

## III. ANALYSIS

Defendant raises a wide variety of claims and allegations in the Motions, but in both the First Motion and Second Motion he makes substantively the same three broad arguments. First, Defendant argues that factual inaccuracies in the Complaint (17-MJ-315-LRR docket no. 2) render his Arrest Warrant (17-MJ-315-LRR docket no. 3) and his subsequent prosecution and conviction invalid. *See* First Motion at 3; Second Motion at 4-5. Second, Defendant alleges that witnesses were not properly sequestered at his trial.

*See* First Motion at 1; Second Motion at 1-2. Third, Defendant alleges a wide-ranging conspiracy involving misconduct on the part of the government, law enforcement, United States Chief Magistrate Judge C.J. Williams and Defendant's prior attorneys. *See* First Motion at 1-5; Second Motion at 1-11. The court shall address each argument in turn.

### A. *Complaint*

Defendant argues that a defect in the Complaint renders his conviction invalid. He alleges that Task Force Officer John O'Brien made several material misrepresentations in his sworn affidavit, which was filed as part of the Complaint. *See* First Motion at 3; Second Motion at 4-5. He asserts that Officer O'Brien misstated the information provided by an eyewitness. *See* Second Motion at 4-5. Defendant argues that Exhibit A, a recording of the 911 call made by the witness in question, demonstrates the falsity of Officer O'Brien's statements. *See id*. Defendant further argues that Officer O'Brien made conflicting statements in the Complaint about the recovery of certain items of physical evidence. *See id*. at 5. At the Hearing, Defendant argued that without these statements the Complaint would fail for lack of probable cause, and, thus, the Arrest Warrant would never have been issued. Defendant further argued that his arrest pursuant to the Arrest Warrant led to his trial, which led to his conviction, so that he would not have been convicted if he had never been arrested. Defendant concluded that if the Complaint lacked probable cause and his arrest were invalid, the trial and conviction that followed would also be invalid, and that, therefore, the jury's verdicts must be set aside and his case dismissed.

### 1. *Applicable law*

In the Motions, Defendant requests that the court vacate the jury's findings of guilt and dismiss the Superseding Indictment with prejudice. *See* First Motion at 5 (requesting that the court "set aside [Defendant's] conviction and dismiss all charges with extreme prejudice"); Second Motion at 11 (requesting that the court "overturn [Defendant's]

conviction" and that "all charges against [Defendant] [be] dismissed and this case [be] dismissed with extreme prejudice with demand for [Defendant's] immediate release"). Defendant does not cite to any Federal Rule of Criminal Procedure or any other legal authority that would empower the court to grant him the relief he requests. *See generally* Motions. Because Defendant is proceeding pro se, however, the court shall liberally construe the Motions as motions for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. *See United States v. Sellner*, 773 F.3d 927, 932 (8th Cir. 2014) ("A document filed pro se is to be liberally construed." (quotation omitted)). Rule 29 is the only rule that would permit the court to vacate the jury's verdicts and dismiss the Superseding Indictment.

Federal Rule of Criminal Procedure 29 provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). A motion for judgment of acquittal must be filed within fourteen days after trial. *See* Fed. R. Crim. P. 29(c). Pursuant to such a motion, the court may set aside the verdict and enter a judgment of acquittal. *See id*. Jury verdicts are not lightly overturned. *See, e.g.*, *United States v. Peneaux*, 432 F.3d 882, 890 (8th Cir. 2005); *United States v. Stroh*, 176 F.3d 439, 440 (8th Cir. 1999). The court must view the evidence in the light most favorable to the government and draw all reasonable inferences in the government's favor. *See United States v. Peters*, 462 F.3d 953, 957 (8th Cir. 2006). The court must uphold the jury's verdict so long as a reasonable-minded jury could have found the defendant guilty beyond a reasonable doubt. *See id*. Moreover, the court "must uphold the jury's verdict even where the evidence 'rationally supports two conflicting hypotheses' of guilt and innocence." *Id*. (quoting *United States v. Serrano-Lopez*, 366 F.3d 628, 634 (8th Cir. 2004)). It is not the province of the court to evaluate the credibility of witnesses—that task is for the jury. *See United States v. Hayes*, 391 F.3d 958, 961 (8th Cir. 2004).

### 2. *Validity of Defendant's Conviction*

Initially, the court notes that the Motions are untimely as Defendant filed the First Motion eighty-two days after the Jury Verdict and the Second Motion ninety days after the Jury Verdict. *See* Fed. R. Crim. P. 29(c)(1) ("A defendant may move for a judgment of acquittal, or renew such a motion, within [fourteen] days after a guilty verdict or after the court discharges the jury, whichever is later."). Nevertheless, the court shall consider the substance of the Motions. Defendant's argument, however, does not support granting his requested relief as it does not challenge the sufficiency of the evidence presented at trial. *See* Fed. R. Crim. P. 29(a) (authorizing a judgment of acquittal only where "the evidence is insufficient to sustain a conviction"). Moreover, Defendant's argument is based on the faulty premise that the Complaint formed the basis for his trial and conviction. A criminal complaint only authorizes a judge to issue an arrest warrant. *See* Fed. R. Crim. P. 4(a). A trial on a felony charge must be based on an indictment by a grand jury. *See* Fed. R. Crim. P. 7(a) (requiring felonies to be prosecuted by indictment). Thus, the charges at issue were brought in the Superseding Indictment, not the Complaint. Defendant's prosecution and trial would have proceeded regardless of whether the Complaint lacked probable cause.

To the extent that Defendant challenges the basis for his prosecution, his argument is misplaced. "[G]rand jury proceedings are afforded a strong presumption of regularity, and a defendant seeking to overcome that presumption faces a heavy burden." *United States v. Fenner*, 600 F.3d 1014, 1021 (8th Cir. 2010) (alteration in original) (quoting *United States v. Hintzman*, 806 F.2d 840, 843 (8th Cir. 1986)). "Dismissal is an extreme remedy, and is inappropriate absent a showing of actual prejudice." *Id.* (quotations omitted). Defendant has not satisfied his heavy burden of showing actual prejudice. Defendant was convicted not based on the testimony presented to the grand jury, but rather on the testimony and evidence presented to the petit jury at trial. "A petit jury's

subsequent guilty verdict not only means that there was probable cause to believe that the defendant was guilty as charged, but that he was in fact guilty as charged beyond a reasonable doubt." *United States v. Wilson*, 565 F.3d 1059, 1070 (8th Cir. 2009) (alterations and quotations omitted); *see also United States v. Dunn*, 723 F.3d 919, 928 (8th Cir. 2013) ("[T]he petit jury's subsequent guilty verdict rendered any errors either harmless or moot."). Thus, any alleged error stemming from the initiation of the case has been rendered moot by Defendant's subsequent conviction. Accordingly, the court shall deny the Motions as to the issue of the Complaint.

### B. Sequestration Violation

Defendant alleges that, during the trial, "[g]overnment witnesses heard other [g]overnment witnesses' testimony and private discussions" between the court and the parties. First Motion at 1. He alleges that some witness or witnesses heard trial testimony through an intercom while waiting in a conference room adjacent to the courtroom. *See id*. Defendant declines to specify which witnesses heard what testimony "for fear of threats and intimidation towards these witnesses." Second Motion at 2. Defendant provides no evidence to support his claim or basis to fear threats or intimidation of witnesses. Defendant also does not articulate any foundation for how he became aware of this alleged violation. At the Hearing, Defendant offered no evidence or testimony in support of this claim. Defendant specifically stated that he was not raising a sequestration violation as a basis to dismiss his case. Nevertheless, given the nature of the allegation, the court finds it appropriate to consider the claim.

#### 1. Applicable law

The court initially notes that, as with Defendant's prior argument, this claim does not support granting Defendant's requested relief because it does not challenge the sufficiency of the evidence presented against him at trial. *See* Fed. R. Crim. P. 29(a) (authorizing a judgment of acquittal only where "the evidence is insufficient to sustain a

6

conviction"). However, this issue is cognizable as a motion for new trial pursuant to Federal Rule of Criminal Procedure 33. Although Defendant does not expressly seek such an alternative remedy, the court finds it appropriate to consider. Therefore, the court shall liberally construe this argument as a motion for new trial and examine it on that basis.

Federal Rule of Criminal Procedure 33 provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "The decision to grant a Rule 33 motion is within the sound discretion of the [d]istrict [c]ourt . . . ." *United States v. Amaya*, 731 F.3d 761, 764 (8th Cir. 2013) (quoting *United States v. Dodd*, 391 F.3d 930, 934 (8th Cir. 2004)). "When considering a motion for a new trial, a district court may 'weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict.'" *Id.* (quoting *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002)). However, "[m]otions for new trials are generally disfavored and will be granted only where a serious miscarriage of justice may have occurred." *United States v. Morris*, 817 F.3d 1116, 1121 (8th Cir. 2016) (quoting *United States v. Fetters*, 698 F.3d 653, 656 (8th Cir. 2012)). "Trial courts should 'exercise the Rule 33 authority sparingly and with caution.'" *United States v. Knight*, 800 F.3d 491, 504 (8th Cir. 2015) (quoting *Campos*, 306 F.3d at 579).

### 2. *Factual findings*

After Defendant filed the First Motion, the government investigated the alleged sequestration violation. FBI Special Agents Thomas Reinwart and Thomas Pearson, who had no prior involvement in this case, interviewed all but one of the government witnesses who testified at trial. Government witness Ivan Clark was not interviewed because he was in the custody of the United States Marshal Service during the trial and could not have accessed the conference room. Of those witnesses interviewed, only one, Debra Shaw, claimed to have heard anything from inside the courtroom.

7

Shaw told Special Agent Pearson that she waited in the conference room for approximately thirty minutes before testifying. She stated that, at some point during that period, she became aware that she could hear a conversation through a loudspeaker in the ceiling. She did not pay particular attention to the discussion, but recalled that a man was asked if he had ever "testified for people in jail before," and if he was being paid for his testimony. Shaw stated that the man said that he had testified three or four times before but was not being paid. She stated that she then heard the court dismiss the jury and discuss trial matters with the parties outside the presence of the jury. Shaw stated that she began paying more attention because she realized that the discussion now related to her daughter, who was listed, but never called, as a witness. Shaw stated that she heard the parties discussing whether her daughter would need to consult an attorney before she testified. Shaw stated that the government's witness coordinator then entered the conference room, heard that the audio was playing through the speaker and left to alert courtroom personnel. Shaw stated that the witness coordinator told some member of the courtroom staff that the audio was playing in the conference room, whereupon the audio ceased. Shaw stated that hearing these courtroom proceedings did not affect her testimony.

The room in question is a small conference room for attorneys, which is accessible through the vestibule of the courtroom. At the time of the trial, it was equipped with a speaker that was connected to the electronic audio system in the courtroom. By default, no audio plays in the conference room. The audio could only have been turned on by a member of the courtroom staff. Neither party had access to the audio system or the controls that switch the conference room audio on and off. No member of the courtroom staff had any recollection of turning on the audio in the conference room, being alerted by the witness coordinator that the audio was on or being asked to turn it off. Additionally, the conference room is separated from the jury room, and no member of the jury entered the conference room during the trial. There is no speaker in the jury room capable of

relaying courtroom audio to the jury room.

Shaw's statement to Special Agent Pearson is only partially consistent with the record. On January 23, 2018, Shaw testified from 1:33 p.m. to 2:03 p.m. Directly prior to her testimony, the government called Clark, who testified from 1:01 p.m. to 1:32 p.m. Clark testified pursuant to a cooperation agreement, and defense counsel questioned him on cross examination about his history as a cooperator. However, the court did not dismiss the jury after Clark's testimony. Rather, Shaw testified immediately after Clark. The court did eventually have a discussion with the parties outside the presence of the jury regarding Shaw's daughter and the possibility that she would need to consult with a lawyer, however that conversation did not occur until 2:07 p.m., after Shaw's testimony and the testimony of Cedar Rapids Police Department Sergeant Robert Collins.

### 3. *Effect of alleged violation*

"The purpose of sequestration is to prevent witnesses from tailoring their testimony to that of prior witnesses and to aid in detection of dishonesty." *United States v. Vallie*, 284 F.3d 917, 921 (8th Cir. 2002). "A district court may properly deny relief related to sequestration violations when the violations do not prejudice a defendant." *United States v. Engelmann*, 701 F.3d 874, 878 (8th Cir. 2012). A defendant is not prejudiced when a sequestration violation occurs between two witnesses who "offer[] testimony on two completely different issues that [do] not overlap and [do] not involve any of the same facts." *United States v. Collins*, 340 F.3d 672, 681 (8th Cir. 2003).

The court finds that, if any sequestration violation occurred, it was harmless and did not prejudice Defendant. At trial, Clark testified about Defendant's history of possessing firearms and his own attempts to purchase firearms and marijuana from Defendant. *See* Trial Transcript Vol. II (docket no. 128) at 122-46. Shaw testified about her personal history with Defendant, including Defendant's attempts to extort money from her in order to pay a drug debt. *See id.* at 146-78. Shaw never discussed Clark in her testimony, nor

9

did she testify about any of the incidents that Clark mentioned. *See id*. Shaw's testimony was wholly unrelated to Clark's testimony, and therefore would not have been affected by it. *See United States v. Engelmann*, 720 F.3d 1005, 1010 (8th Cir. 2013) (finding no prejudice for a sequestration violation where the overheard testimony "bore no direct relationship to and was not in any way pivotal to the testimony that [the witness] ultimately gave" (quotations omitted)).

It is impossible that Shaw could have altered her testimony based on the discussion she allegedly heard about her daughter needing a lawyer, because that did not occur until after she had testified. Additionally, Shaw had previously testified before the grand jury. *See* Grand Jury Testimony of Debra Shaw ("Exhibit 2") (docket no. 134). Shaw's trial testimony was consistent with her grand jury testimony and did not deviate in any material respect. *Compare* Trial Transcript Vol. II at 146-78 *with* Exhibit 2. In the Motions, Defendant also briefly suggests that the jury may have heard discussions between the court and the parties, although he does not claim that it actually occurred and provides no evidence suggesting that it did. *See* First Motion at 1; Second Motion at 2. Defendant's suggestion is patently without merit as the jury room is not wired to receive sound from the courtroom and no juror ever entered the conference room.

In sum, there is no evidence that Defendant was in any way prejudiced by the alleged sequestration violation. Certainly no "serious miscarriage of justice may have occurred" that would warrant a new trial. *Morris*, 817 F.3d at 1121. Further, there exists no basis in law to grant Defendant the relief he requests, i.e. vacating the jury's verdict and dismissing the Superseding Indictment, based on an alleged sequestration violation. Accordingly, the court shall deny the Motions as to this issue.

### C. *Misconduct Allegations*

Defendant makes a number of broad claims regarding various individuals involved in his case, accusing them of "corruption, collusion, falsifying documents,

falsifying/altering, and tampering with evidence, subornation of perjury . . . and participating in an ongoing criminal enterprise." First Motion at 4. Defendant claims that the government, law enforcement, Judge Williams and Defendant's former attorneys are part of a conspiracy to falsely convict him. *See* First Motion at 1-5; Second Motion at 1-11. Defendant offers no evidence for his fantastic claims, and provides few specific complaints. The court finds that Defendant has offered nothing but hyperbole and bare allegations in support of his claim. There is no evidence that Defendant has been the victim of any intentional misconduct, let alone misconduct that would warrant a new trial or a judgment of acquittal. Accordingly, the court shall deny the Motions with regard to the alleged misconduct. Although the court finds the entirety of this argument to be wholly without merit, the court shall address the few specific points Defendant raises.

   1. *** Detention hearing***

Defendant accuses Officer O'Brien of committing perjury at Defendant's Detention Hearing. *See* First Motion at 2; Second Motion at 5. At the Detention Hearing, Officer O'Brien confused the names of two witness during his testimony. *See* Judge Williams's Detention Order (17-MJ-315-LRR docket no. 20) at 2. Upon realizing his error, Officer O'Brien notified the government, who notified Defendant's counsel and Judge Williams. *See id*. A supplemental hearing was held, and Officer O'Brien corrected his testimony. *See id*. Judge Williams found that Officer O'Brien's initial testimony was "an honest misrecollection" and not "an intentional misstatement of fact." *Id*. at 3. The court affirmed Judge Williams's Detention Order and found that he had "accurately and thoroughly set forth the facts." November 1, 2017 Order (docket no. 19) at 3. Defendant raises this issue again in the Motions without providing any new evidence or argument. Therefore, the court sees no reason to alter its prior ruling. Moreover, Defendant provides no argument as to why allegedly false testimony from his Detention Hearing warrants vacating the jury's verdict and dismissing the case.

Accordingly, the court shall deny the Motions on this ground.

### 2. *DNA warrant*

Defendant asserts that, on November 7, 2017 and November 8, 2017, law enforcement attempted to "steal" his DNA to "plant evidence" by illegally taking a buccal swab of his DNA while he was in custody awaiting trial. First Motion at 3; Second Motion at 6. Defendant claims that he was told that the officers had a warrant, but that, in fact, no such warrant existed. *See* First Motion at 3; Second Motion at 6. Defendant argues that Linn County Sheriff's Deputy Chad Shover admitted at trial that the warrant did not exist. *See id*. Defendant is incorrect. On November 7, 2018, Judge Williams signed a warrant authorizing law enforcement to collect a DNA sample from Defendant. *See* Search Warrant (17-MJ-364-CJW docket no. 1). The Search Warrant was filed with the court the day it was signed. Deputy Shover testified at trial only that he never possessed the Search Warrant himself, not that no warrant existed. *See* Trial Transcript Vol. II at 238-39.

Accordingly, the court shall deny the Motions as to this issue.

### 3. *Trial testimony*

Defendant alleges that Clark gave false testimony at trial and committed perjury. *See* First Motion at 3; Second Motion at 7. Defendant does not specify how Clark's testimony was untruthful. Defendant offers only his own, self-serving declaration as evidence that Clark's testimony was untruthful. It would be inappropriate for the court to consider this argument in a motion for judgment of acquittal, because the court does not consider witness credibility when deciding a Rule 29 motion. *See Hayes*, 391 F.3d at 961. Even if the court were to address the Motions as motions for new trial, wherein the court could consider witness credibility, the court would not grant Defendant a new trial based solely on his self-serving assertion that a witness against him had been untruthful. Moreover, even if Defendant offered some evidence casting doubt on Clark's truthfulness,

it would not so diminish the weight of the evidence against Defendant as to require a new trial. *See United States v. Davis*, 534 F.3d 903, 913 (8th Cir. 2008) ("[T]he defendants' ability to point to the government's witnesses' credibility problems does not establish that the evidence is so lacking in probative force that a new trial is warranted.").

Defendant also argues that the fact that Officer O'Brien and Defendant's girlfriend, Chelsea Shaw, were subpoenaed by the government as trial witnesses but never called to testify was a violation of his "right to face [his] accuser and cross examine them." First Motion at 2; Second Motion at 4. Defendant offers no argument or explanation as to why the government's failure to call these witnesses violated his rights under the Confrontation Clause. No testimonial hearsay from these witnesses was brought into evidence. *See Crawford v. Washington*, 541 U.S. 36, 56 (2004) (holding that the admission of testimonial hearsay from non-testifying witnesses violates the Confrontation Clause). To the extent that Defendant's argument is based on the fact that Officer O'Brien and Chelsea Shaw were grand jury witnesses, Defendant's argument is misplaced. The government's failure to call a grand jury witness at trial does not violate Defendant's rights under the Confrontation Clause. *See Dunn*, 723 F.3d at 928.

Defendant also characterizes the government's decision to subpoena Chelsea Shaw but not call her to testify as an attempt to intimidate her, and prevent her from testifying on his behalf. First Motion at 2; Second Motion at 4, 6. Defendant offers neither evidence that Chelsea Shaw felt intimidated, nor argument as to why a government subpoena would prevent her from testifying as she had otherwise intended. Defendant has failed to show that any misconduct occurred, or that the result of the trial would have been any different but for the alleged misconduct. He is therefore entitled to no relief. *See United States v. La Fuente*, 54 F.3d 457, 462 (8th Cir. 1995) ("To obtain a new trial based on prosecutorial misconduct, a defendant must show not just that misconduct occurred, but that it 'fatally infected' the trial." (quoting *Rhodes v. Foster*, 682 F.2d 711, 714 (8th Cir.

1982))).

Accordingly, the court shall deny the Motions as to this issue.

## IV.  CONCLUSION

In light of the foregoing, the First Motion (docket no. 110) is **DENIED** and the Second Motion (docket no. 125) is **DENIED**.

**IT IS SO ORDERED.**

**DATED** this 19th day of July, 2018.

LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA